UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA
(ORANGEBURG DIVISION)

Civil Action No. _____

| | |
|---|---|
| Pamela J. Byrdic,<br><br>      Plaintiff,<br><br>  v.<br><br>G&P Trucking Company, Inc. and G&P Logistics, Inc.,<br><br>      Defendants. | |

**COMPLAINT**
**(JURY TRIAL DEMANDED)**

Plaintiff Pamela J. Byrdic, by and through her undersigned counsel, complaining of the Defendants G&P Trucking Company, Inc. and G&P Logistics, Inc., alleges and states as follows:

**JURISDICTION**

1. Plaintiff invokes this Court's jurisdiction pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. § 1331, and 42 U.S.C. § 1988.

2. The unlawful employment practices alleged herein were committed in Calhoun County, within the Orangeburg Division of the District of South Carolina. See 42 U.S.C. § 2000e-5(f)(3).

**PARTIES**

3. Plaintiff Pamela J. Byrdic is a female citizen of the United States and a resident of Richland County, South Carolina. She was employed by Defendants at corporate headquarters at

126 Access Rd., Gaston, located in Calhoun County, South Carolina, at all times relevant to the allegations set forth in this complaint.

4.     Defendant G&P Trucking Company, Inc., on information and belief, is a corporation organized under the laws of the state of South Carolina, with its headquarters located in Calhoun County, South Carolina. Defendant does business in the state of South Carolina in the District of South Carolina, and has facilities located throughout South Carolina and in at least five other states.

5.     Defendant G&P Logistics, Inc., on information and belief, is a subsidiary corporation of Defendant G&P Trucking organized under the laws of the state of South Carolina, with its headquarters located in Calhoun County, South Carolina. Defendant does business in the state of South Carolina in the District of South Carolina, and has facilities located throughout South Carolina and in at least five other states.

6.     Defendants, on information and belief, are corporations with more than 500 employees at various facilities.

7.     Defendants meet the statutory definition of an employer under Title VII, 42 U.S.C. § 2000e et seq., and related law.

## ADMINISTRATIVE PROCEDURES

8.     Plaintiff, acting pro se, filed a charge of employment discrimination against Defendants with the South Carolina Human Affairs Commission (SHAC) on or about December 19, 2014, in connection with her wrongful termination on or about December 15, 2014. In South Carolina, a deferral state in which the U.S. Equal Employment Opportunity Commission (EEOC) has delegated certain duties to SHAC, the charge of discrimination was dual filed with

the EEOC. See SHAC Charge # 4-14-120D,S,RET and EEOC Deferral Charge # 14C-2015-00167.

9. Plaintiff on or about August 27, 2015, received a Notice of Right to Sue from SHAC on Charge # 4-14-120D,S,RET dated August 24, 2015, entitling her to institute a civil action.

10. Plaintiff on or about August 30, 2015, requested a substantial weight review by the EEOC.

11. Plaintiff on or about September 26, 2015, received a Notice of Right to Sue from the EEOC on Charge # 14C-2015-00167 dated September 24, 2015, entitling her to institute a civil action.

## FACTUAL ALLEGATIONS

12. Plaintiff is a woman.

13. Defendants hired Plaintiff on or about November 21, 2008, employing her first as a customer specialist for billing and collections and later as a logistics coordinator in the Logistics Division at corporate headquarters. Plaintiff was employed by Defendants in this capacity until she was wrongfully terminated for unlawful and discriminatory reasons on or about December 15, 2014.

14. Plaintiff was classified as a salaried employee, not an hourly employee.

15. In or about January 2014, Plaintiff was informed by her supervisor that she and all other employees in the Logistics Division would be required to start clocking in and out. The supervisor stated words to the effect of, "Effective immediately, everyone is required to clock in and out."

16. Plaintiff began clocking in and out as instructed, and did so from January 2014 until she was instructed that she no longer had to do so on or about November 21, 2014, because there was no company policy requiring salaried employees to clock in and out.

17. During 2014, Plaintiff eventually learned and realized that none of the male employees in the Logistics Division were required to clock in and out as hourly employees are required to do. Plaintiff understood and believed that the male employees in the Logistics Division were, like her, salaried employees and not hourly employees. Plaintiff also understood and believed the other female employees in the Logistics Division were, like her, salaried employees and not hourly employees, but only the female employees in the Division were required to clock in and out.

18. Plaintiff initially questioned her supervisor about why she was required to clock in and out as a salaried, female employee. Plaintiff wished to know why the salaried, female employees in the Logistics Division were being singled out and required to clock in and out, but the salaried, male employees in the Logistics Division were not. The supervisor either ignored or did not adequately respond to her inquiries.

19. Plaintiff contacted Human Resources managers and asked why she was required to clock in and out as a salaried, female employee. Plaintiff wished to know why the salaried, female employees in the Logistics Division were being singled out and required to clock in and out, but the salaried, male employees in the Logistics Division were not.

20. On information and belief, after Human Resources managers investigated the matter, Plaintiff was informed on or about November 21, 2014 that, contrary to her supervisor's instructions, there was no company policy requiring salaried employees in the Logistics Division

to clock in and out like an hourly employee, and Plaintiff no longer would have to do so.

21. At a meeting with her supervisor and a Human Resource manager on or about November 24, 2014, Plaintiff's supervisor, at the beginning of the meeting, leaned across the table and told Plaintiff words to the effect of, "You aren't going to have to worry about clocking in and out anymore because you're not going to have access to the intranet" (the company's internal computer system).

22. Plaintiff understood and believed the supervisor's statement to mean that she would fired immediately or in the near future.

23. Plaintiff understood and believed that her supervisor and Defendants were retaliating against her for questioning why she and other salaried, female employees in the Logistics Division had been singled out and treated differently than the male employees with regard to clocking in and out like an hourly employee.

24. Plaintiff was wrongfully terminated for unlawful and discriminatory reasons on or about December 15, 2014.

## FOR A FIRST CAUSE OF ACTION
### (Title VII – Sex discrimination)

25. Plaintiff incorporates each of the foregoing allegations as fully as if repeated herein verbatim.

26. Plaintiff, a woman, belongs to a protected group.

27. Plaintiff was subjected to discriminatory and disparate treatment by a supervisor and Defendants, as described herein. Plaintiff was subjected to a discriminatory policy and practice that had a disparate impact on female employees.

28. The discriminatory and disparate treatment was based on Plaintiff's sex. The

discriminatory policy and practice had a disparate impact based on employees' sex.

29. The discriminatory and disparate treatment, and the disparate impact of the discriminatory policy and practice, are imputable to the employer.

30. Defendants, acting through their duly authorized agents and employees, committed and adhered to various sexually discriminatory decisions, practices, and policies that affected the compensation, terms, conditions, and privileges of employment of Plaintiff and other female employees, including, but not limited to, the following:

> a. Requiring Plaintiff or other salaried, female employees in the Logistics Division to clock in and out like hourly employees, when salaried, male employees in the Division were not required to do so;
>
> b. Allowing or authorizing a supervisor to impose sexually discriminatory decisions, policies or practices on female employees in the Logistics Division;
>
> c. Failing to prohibit a supervisor from imposing sexually discriminatory decisions, policies or practices on female employees in the Logistics Division;
>
> d. Failing to establish or enforce policies and practices which prohibit the treatment of female employees in an unlawful and sexually discriminatory manner;
>
> e. Failing to adequately hire, train or supervise its employees with regard to the prohibition and prevention of the treatment of female employees in an unlawful and sexually discriminatory manner;
>
> f. Failing to treat male and female employees in the Logistics Division on an equal and nondiscriminatory basis with regard to salary, employment, discipline,

suspension, termination, or employment conditions, policies and practices;

g. Retaliating against and ultimately firing Plaintiff after she raised questions or concerns about sexually discriminatory decisions, policies or practices by Defendant within the Logistics Division; or

h. In other ways which may be discovered in the course of this litigation.

31. The effect of the negligent or intentional decisions, practices, and policies pursued by Defendants as alleged herein discriminated against Plaintiff and other female employees by depriving her of fair and equal employment opportunities, and adversely affected her status as an employee because of her sex in violation of Title VII, 42 U.S.C. § 2000e-2, et seq., and 42 U.S.C. § 1981a.

32. Defendants are vicariously liable for the negligent or intentional decisions, practices, and policies pursued by its employees or agents because Plaintiff suffered a tangible employment action. Furthermore, Defendants were negligent in failing to take effective action to stop the discriminatory and disparate treatment about which it knew or should have known.

33. As a result of Defendants' negligent or intentional actions or omissions, Plaintiff has been wrongfully terminated from her job, deprived of income in the form of wages, both back pay and front pay, and prospective retirement benefits, social security, and other benefits due to her as an employee because of her sex in a sum to be proven at trial. Plaintiff also has suffered emotional and mental distress, physical and mental pain and suffering, medical and counseling expenses, loss of enjoyment of life, and damage to her reputation as a result of Defendants' actions.

34. Defendants have acted maliciously or with reckless indifference to Plaintiff's

rights under Title VII, 42 U.S.C. § 2000e-2, et seq., and 42 U.S.C. § 1981a.  Plaintiff is entitled to be reinstated to her position and to recover all actual, compensatory and punitive damages allowed by law, as well as prejudgment interest, attorney's fees, experts' fees and the costs of bringing this action.

## FOR A SECOND CAUSE OF ACTION
### (Title VII – Retaliation)

35. Plaintiff incorporates each of the foregoing allegations as fully as if repeated herein verbatim.

36. Plaintiff, a woman, belongs to a protected group.

37. Plaintiff was subjected to discriminatory and disparate treatment by a supervisor and Defendants, as described herein.  Plaintiff was subjected to a discriminatory policy and practice that had a disparate impact on female employees.

38. The discriminatory and disparate treatment was based on Plaintiff's sex.  The discriminatory policy and practice had a disparate impact based on employees' sex.

39. The discriminatory and disparate treatment, and the disparate impact of the discriminatory policy and practice, are imputable to the employer.

40. Plaintiff reported the existence of the discriminatory and disparate treatment to her supervisors and Human Resources managers.

41. Defendants, acting through their duly authorized agents and employees, committed and adhered to various sexually discriminatory decisions, practices, and policies that affected Plaintiff's compensation, terms, conditions, and privileges of employment, as described herein.

42. Defendants, through their duly authorized agents and employees, committed and

adhered to various sexually discriminatory decisions, practices, and policies that affected the compensation, terms, conditions, and privileges of employment of Plaintiff and other female employees and, in doing so, retaliated against Plaintiff for daring to question various sexually discriminatory decisions, practices, and policies that affected Plaintiff's compensation, terms, conditions, and privileges of employment, as described herein.

43. Defendants retaliated against Plaintiff in various ways, including, but not limited to, the ways described herein. Defendants retaliated against Plaintiff by firing her for a false and pretextual reason.

44. The effect of the decisions, practices, and policies pursued by Defendants in retaliation against Plaintiff as alleged herein discriminated against Plaintiff and deprived her of fair and equal employment opportunities, and adversely affected her status as an employee because of her sex in violation of Title VII, 42 U.S.C. § 2000e-2, § 2000-3(a) et seq., and 42 U.S.C. § 1981a.

45. As a result of Defendants' actions or omissions and retaliation, Plaintiff has been wrongfully terminated from her job, deprived of income in the form of wages, both back pay and front pay, and prospective retirement benefits, social security, and other benefits due to her as an employee because of her sex in a sum to be proven at trial. Plaintiff also has suffered emotional and mental distress, physical and mental pain and suffering, medical and counseling expenses, loss of enjoyment of life, and damage to her reputation as a result of Defendants' actions.

46. Defendants have acted maliciously or with reckless indifference to Plaintiff's rights under Title VII, 42 U.S.C. § 2000e-2, *et seq.*, and 42 U.S.C. § 1981a. Plaintiff is entitled to be reinstated to her position and to recover all actual, compensatory and punitive damages

allowed by law, as well as prejudgment interest, attorney's fees, expert's fees and the costs of bringing this action.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial on all issues deemed triable to a jury. See 42 U.S.C. § 2000e, et seq., 42 U.S.C. § 1981a(c), and 42 U.S.C. § 1988.

WHEREFORE, having fully set forth her Complaint, Plaintiff respectfully prays this Court to:

a.  Order Defendants to make Plaintiff whole by providing appropriate back pay, front pay, and reimbursement for lost pension, retirement, social security, health insurance and other benefits, plus prejudgment interest, in an amount to be shown at trial;

b.  Order Defendants to pay Plaintiff actual, compensatory and punitive damages as allowed by law and in an amount to be shown at trial;

c.  Order Defendants to reinstate Plaintiff to her former position at her former salary and with all job-related benefits, including any raises and increases in benefits due Plaintiff since her wrongful termination;

c.  Order Defendants to purge any and all negative references from her personnel file, and refrain from relaying any negative references or comments to any future employer;

d.  Order Defendants to be taxed with the costs of this action, including attorney's fees, expert's fees and the costs of bringing this action; and

e.  Grant such additional relief as the Court may deem just and proper.

Respectfully submitted,

       PROFFITT & COX, LLP

       *s/ David Proffitt*
       David Proffitt, Federal ID No. 7503
       140 Wildewood Park Drive, Suite A
       Columbia, S.C.  29223-4311
       Telephone:  (803) 834-7097
       Fax:  1-888-711-1057
       Email:  dproffitt@proffittcox.com

       Attorneys for Plaintiff

December 16, 2015