# EXHIBIT X

*Byrdic's Request for Substantial Weight Review*

**[Exhibit 29 to Byrdic Deposition]**

Pamela J. Byrdic
207 Rushing Wind Dr.
Irmo, SC 29063
(803) 240-9314

August 30, 2015

Renee E. Grube
State and Local Program Manager
EEOC Charlotte District Office
129 West Trade St. - Suite 400
Charlotte, NC 28202

Ref: Request for substantial weight review
Pamela J. Byrdic v. G&P Trucking Co., Inc.
SHAC # 4-14-120D,S,RET
EEOC # 14C-2015-00167

Dear Ms. Grube:

I am writing to you to request a substantial weight review of my file. I have enclosed a copy of the assessment for reference.

I ask that you take note of the Severance agreement that G&P sent me on 12/15/2014. SHAC has this document. This agreement would pay me money to take away all of my rights and in turn give them the right to sue me, or recover costs as they worded it, if I did any of the many things mentioned in the agreement. I contend that they did not have just cause to terminate me and the agreement was to offer me money to not file any claims against them. I was terminated in retaliation for taking my question to HR.

In reference to the first paragraph of the SHAC findings: My complaint was that the female salaried employees in our department were required to clock in and out, and the male salaried employees are not required to clock in and out. The persons that I listed on the complaint were salaried, not hourly, and the females only were asked to clock in and out. The females that I referenced were at the time I asked in 2014 salaried and clocking in and out. I had been an employee for over 5 years at the point I was told to clock in and out, and the original question was why this was now being required. In January 2014, Mr. Sellers stated that, I quote, "Effective immediately, everyone is required to clock in and out". I had someone show me the process, as the phones were used to clock in and out, and it was tracked on the company's intranet website. I clocked in and out daily as requested. It was later determined that it was not everyone that was clocking in and out, just the females, whether hourly or salaried. When I asked the 3 males that I referenced on the complaint how they felt about clocking in and out, they said to me that they were salaried and asked why they would have to do that.



BYRDIC-000020

I have given record of the following with dates to the SHAC:

Mr. Sellers had not answered why it was necessary for me to clock in and out, so I asked Mr. Grubbs in HR to see why this was being required. After days had passed, I asked what was found, and he said that Mr. Stokes (TPS Logistics) had asked that I clock in and out. I asked Mr. Stokes, and he said he absolutely had not required that. So I let Mr. Grubbs know that the information wasn't right. When the four of us met concerning this, Mr. Sellers said that I wasn't going to have to worry about clocking in and out because I no longer had access to the intranet. This meant at that time he was intending to terminate me, because all employees have access to the intranet, and that meant I was no longer going to be employed. I was told in the meeting that from an HR and a payroll perspective, there was no need for me to clock in and out, and I also later received an email stating the same. When I asked that besides myself, why the other females on salary were clocking in and out, and not the males, the meeting ended very shortly thereafter. I believe that Mr. Sellers intended to terminate me at that meeting due to what he said at the beginning of the meeting, and that is was in retaliation for going to HR about this issue. There was nothing mentioned in that meeting that it was being required because I worked for both companies, which is what the attached finding states in the second paragraph. Although I did worry that I was going to get terminated for asking HR the question, I hoped and prayed that I was wrong. I continued to work hard and do my job and hoped with that being resolved everything was going to work out. It is clear that it did not work out for me.

Also note that I did not find out that I had a brain lesion until a few days before I was discharged. My supervisor did not ask me what was found while I was in the hospital, so I don't believe that a disability had any effect on the decision to terminate me – I have not been determined to be disabled – but I have no way of knowing if being in the hospital played a part in any of this. When I called to say that I was released from the hospital and would be returning to work the next day, he said I was suspended and to not come in, and that I need to call them the following day. The next day I called and was terminated and they emailed me a severance agreement. This was just a month after I asked HR if it was necessary for me to clock in and out.

I have never had any discussions with the supervisor that there was any problem with my job performance. I worked very hard at my job, and as you can see from my time sheet records, I worked long hours to make sure all of work was always complete and accurate. In fact, I sat down with the president of the company, Mr. Parker, and asked about my future with G&P months before this happened. The owners of TPS Logistics were scaling down for retirement in the near future, and since they paid part of my salary, I was concerned. Mr. Parker told me that with my experience and knowledge they certainly would want to keep me at G&P. I was relieved, as I have been working in the trucking industry since 1987, I loved my career and I loved working in the trucking industry, and I could see no reason not to continue at G&P until retirement.

I have never received an evaluation that stated my job performance was poor. Evaluations are supposed to be done with your supervisor on a yearly basis, and a copy showing the employee and supervisor's signature should be in the personnel file.

In reference to the second paragraph: As I stated above, there was no mention in our meeting that I was required to clock in and out because of the financial relationship between G&P and TPS. Mr. Grubbs and Mr. Sellers with G&P, and Mr. Stokes with TPS were all in the meeting. No mention at all that the reason was the one stated in the attached assessment.

The work that I did for TPS took approximately 30 minutes each day, and all of the overtime that I worked was strictly for G&P. There was never any concern mentioned that my time was not spent appropriately. They said there was NO reason for me to be required to clock in and out, they did not give the reason that is stated in the attached assessment. The working and financial relationship had been the same since November 2008. It was January 2014, over 5 years later, when Mr. Sellers stated that everyone was required to clock in and out, he did not say that everyone who also worked for TPS was now required to. I asked many times from March through October 2014 and Mr. Sellers never replied. It is only after I asked HR and was terminated that this answer was given to the SHAC.

Finally, in reference to the last sentence: I have never left work without notifying a supervisor.

Thank you for reviewing this and helping me in this most upsetting matter. I do not see the "facts" presented by G&P in the content of the assessment from SHAC as being truthful, and these are not the facts that I submitted and warranted an investigation. If you should need any further information, please call me at 803-240-9314.

Sincerely,

*Pamela J. Byrdic*
Pamela J. Byrdic